DICKEY v. FLEMING.

PATENTS; INTERFERENCE.

The testimony in an interference case between an applicant after patent issued, and the patentee, reviewed, and the applicant, although guilty of delay in filing his application, *held*, entitled to priority of invention over the patentee.

Patent Appeals. No. 84. Submitted March 14, 1898. Decided April 4, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry C. Townsend* and *Mr. Joseph R. Edson* for the appellant.

*Mr. Frederic Carragan* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding involving the following issues:

"1. A dynamo-brush consisting of successive layers of wire-gauze formed into the desired shape, and then compacted by pressure.

"2. A dynamo-brush consisting of successive layers of

wire-gauze in which the wires are disposed diagonally to the length of the brush, compacted together by pressure."

The appellee, Wilfrid H. Fleming, filed his application November 13, 1893, and obtained a patent January 30, 1894. The appellant, Joseph W. Dickey, filed his application December 4, 1894, and the interference was soon after declared.

Fleming claims to have invented the brush of the two issues about December, 1891, and to have reduced to practice in March, 1892. Dickey alleges invention about the last of December, 1892, and reduction to practice from January to March, 1893.

The examiner of interferences decided in favor of Fleming, and on appeal was reversed by the Examiners-in-Chief. They in turn were reversed by the Commissioner, and final award of priority was made to Fleming.

The question is one of fact, and there is quite a conflict in the evidence.

After careful examination of the evidence and the views in respect of its credibility and weight, set out at length in the separate opinions of the tribunals of the Patent Office, our conclusion is with the Examiners-in-Chief, that Dickey is entitled to the award of priority.

Concurring generally in the views expressed by them, no useful purpose would be subserved by an elaborate review of the voluminous evidence. We shall content ourselves, therefore, by referring to the opinion of the Examiners-in-Chief, with some additional comments more fully explaining the grounds of our conclusion.

Fleming was an expert electrician or electrical engineer and was the general manager and agent of a partnership called the International Supply Company, during 1891, 1892, and part of 1893. This company dissolved, and was succeeded in March, 1893, by a corporation called the International Trading and Electrical Company, of which Fleming, who was incorporator also, became manager and agent.

Having some difference with his associates, he retired about the last of March, 1894, and contracted for the sale of his brushes with the Manhattan General Construction Company.

Dickey was a skilled mechanic, who made a specialty of electrical work. He contracted with the Supply Company, in 1892 for work on jobs, and soon after moved into a machine shop owned by one Herkner, who was the financial "backer" of that company. There he remained, working for that company, its successor, and the Manhattan Company, until August 31, 1894.

During that time those companies paid for his room in the shop and use of machinery, furnished materials, and paid him by the piece, he furnishing his own help.

All orders and materials came to him from the company through Fleming. His dealings were with Fleming, and he followed the latter's fortunes when he changed to the Manhattan Company, and continued to make the brushes upon similar terms.

Whilst Dickey was so employed in March, 1893, he unquestionably made his first brushes of the kind described in the second issue. About January 1, 1893, Fleming came to him with an order for some brushes to be furnished the navy yard at Brooklyn. He produced a sample brush made of a wire bundle, or wire gauze and solid metal. Dickey said that he found he could stiffen the brush by compressing the folds of gauze and dispense with the solid metal, which was for stiffening merely. He without doubt made the brushes to the number ordered in this manner. They were received and put in use on several Government vessels. They were better than the sample, but still objectionable on account of stiffness.

About March, 1893, Dickey claims to have discovered the construction of the second issue. Instead of rolling the wire gauze straight, as before, he cut it diagonally in strips and then rolled it. When compressed, it was found that the objectionable stiffness of the first had disappeared. It is

certain that Dickey had not before seen a brush constructed in either of the above ways, for Fleming admits that the sample given to Dickey was substantially as described.

Notwithstanding the patent to Fleming, applied for long after this date, this evidence would give priority to Dickey, unless it appears either that Fleming furnished him the idea, or that Fleming actually invented and reduced to practice in April, 1892, as he claims.

Fleming, in giving evidence, said that some time late in 1891 he procured a wire-cloth brush of foreign construction on some one of the Atlantic steamers. The folds were not compressed, but were held together by stitches of strong copper wire; that he conceived the idea of improving by compressing, and took the brush to the shop of one Beinert, who was a repairer of electrical machinery; that after some trials in compressing the gauze cut straight, he discovered the great advantage in cutting diagonally before rolling or folding. The compressing was first done with the aid of a wooden box and a vise and clamps, which is the same process used by Dickey until he resorted to a hydraulic press; that sixteen of these improved brushes were sent to the electrician of the steamship "City of Paris" on or before April 6, 1892, for trial on its outward passage.

It appears that Beinert had two assistants—man and boy— in the shop at the time. These were called as witnesses by Dickey. They neither saw nor heard of these brushes, the construction of which was public, according to Beinert, and occupied some time. Assistance in making them, whilst probably not necessary, must have been desirable. Fleming, who testified to difficulty in procuring the wire gauze, was unable to tell where or from whom he purchased it. He had no memorandum, bill, or receipt. There was no entry in the books of his company showing purchase of goods, expense of manufacture, or receipt or delivery of the brushes from or to any one. He accounts for the absence of charge against the ship by saying that they were experimental and

for his benefit.   Beinert corroborated Fleming in respect of
the manufacture of the brushes, which, he says, were deliv-
ered by him to the company at its office.   His books had
been burned, and he had no memorandum of the transac-
tion ; said that he sent a bill to the company for the work,
received pay, and gave a receipt.   No such receipt was
produced, nor was search made for it.   Fleming said that
in moving offices he had destroyed a number of such papers;
and, further, that the company's books had been badly
kept.

Again, no brush of this new construction was preserved
by Fleming or Beinert; and hence, as we have seen, Flem-
ing had to furnish Dickey a sample of general likeness to
that which he had shown to Beinert.

It is true that the two electricians of the "City of Paris"
testified to the receipt of the brushes aforesaid on board of
that ship in April, 1892; but the sales books of the Inter-
national Electric Company show the delivery of brushes
made by Dickey to that ship on April 8, 1893, and none
prior thereto.   Following that date are similar entries of
sales to the "Paris" and sister ships.   The two electricians
could refer to nothing which would certainly establish the
date given by them, and without reflecting upon their
integrity, it is at least not improbable that they made a
mistake of a year in the date.

Considering, however, the burden that is upon him who
claims priority over a patentee whose date of issue is prior
to his own application, the foregoing evidence is such that
we would not disturb the decision in favor of Fleming were
it not for certain circumstances connected with the subse-
quent manufacture by Dickey with which it cannot be
reconciled.

Having, strangely, preserved no sample of the new con-
struction by Beinert, Fleming says that, upon procuring the
navy yard order, he furnished Dickey the wire-gauze with
which to fill it, and a sample brush, as before described, and

directed him how to cut and compress the wire as Beinert had done. Now, certainly, if Fleming had made such a brush and sent it for trial to the "City of Paris," April 6, 1892, as claimed, there had been ample time for the satisfactory test which he says the electricians of that ship made and reported. Knowing it to be successful, he would no doubt have described it to Dickey, and directed him to finish his order in the same way. The construction is so simple that Fleming himself says an ordinary mechanic could readily understand and accomplish it. Dickey was certainly too good a mechanic not to understand it, if explained to him in a general way. Yet, notwithstanding the statement of Fleming that he gave such explanation and instruction, the fact is proved beyond doubt that the wire-gauze brushes made by Dickey, sent to the navy yard and accepted there, were not rolled from material cut diagonally at all. Grant that Fleming may have suggested to Dickey the idea of compressing the folds, still if he had pointed out and directed the far greater improvement in the cutting and folding of the wire-gauze, it is not reasonable to believe that Dickey would either misunderstand or refuse to obey. The brushes as first made were accepted by the navy yard officers, and Fleming made no suggestion to Dickey, or any one else, of the failure to follow his instructions in respect of this last improvement.

Shortly after the delivery of the next set of brushes in March, which Dickey had made after the plan of the second issue, Fleming called the attention of the navy yard electrician to this improvement. Fleming said to him: " I have had an improvement made on these brushes, which is, having them cut on the bias, making the brush more pliable;" and asked him what he thought of it. There was not one word of the earlier date of invention, or of the experiment made with it upon the "Paris" nearly a year before. Evidently the remark made created, and was calculated to create, the impression that the improvement had

been discovered during or since the construction of the lot delivered in January and February, 1893.

A circumstance against Dickey is his long delay in applying for a patent, even after learning that Fleming claimed the invention. His explanation is that he was not familiar with the patent law and was poor; that he understood from Fleming that he was to be interested in the patent, and was content to share with him, and that he was doing all the work on satisfactory terms. As we have seen, he did all the work on Fleming's orders, and when Fleming went to the Manhattan Company, he followed him there, and continued to make all the brushes until they had a misunderstanding, about August 31, 1894. Dickey's own words are:

"So long as I was connected in the business with Mr. Fleming I had hopes that he would rectify the matter and give me my rights. I had no money myself to carry on any proceedings, but after Mr. Fleming had seen fit to throw me out of the business entirely, or at least tried to do so, I at once made it a point to find some one who was willing to take up the case with me and furnish the money to carry it to a point where I could obtain my rights."

The explanation is plausible, though not satisfactory. Turning to Fleming, and considering all the surrounding circumstances, his delay is hardly so well accounted for, if he in fact made the invention at the date claimed, and that date he can not depart from. He was not ignorant of the value of a patent, or of the steps necessary to procure it. His reasons for not applying earlier than November 13, 1893, are that he wanted to thoroughly satisfy himself as to the behavior of the brushes furnished the "City of Paris" for trial in April, 1892; that he did not at the time know that there would be a demand justifying the expense, and that he was much occupied with other work.

The first reason is not at all satisfactory, for if true that the experimental brushes were delivered to the "Paris" in April, 1892, there had been ample time for their

complete test before he gave Dickey the navy yard order to fill.

The second reason is quite plausible, but under the circumstances applies more strongly in favor of Dickey's delay than his own. Dickey had no means, and easily filled all the orders taken by Fleming. Fleming, however, had the money, and, in fact, when he did apply paid the fees with the funds of the company, with which he was still employed.

The third reason is of no practical importance.

During the conversation before referred to between Fleming and the navy yard electrician, concerning the improvement in the brush, the latter remarked that no doubt he would soon be getting a patent. Fleming laughed and walked away. Returning two weeks later, he handed the electrician his card with a drawing of the brush and the words, "The Fleming patent wire-gauze brush." In the opinion of the Commissioner stress is laid on the fact that Fleming had advertised his invention. The above is the only evidence of advertisement that we have found in the record. No one else saw this card, and if its exhibition to the witness was really in or about March, 1893, it was about six months before a patent was even applied for.

For the reasons given the decision will be reversed, and this decision, with the proceedings herein, will be certified to the Commissioner of Patents, as required by law. It is so ordered.                                *Reversed.*